FILED
SUPERIOR COURT
OF GUAM

2018 MAY 14 AM 11:03

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO.: CF0470-13 |
| vs. | |
| MAX THEODORE DIZON MANABAT, DOB: 09/11/1992 | **DECISION AND ORDER** (Defendant's Motions for Judgment of Acquittal and for New Trial) |
| **DEFENDANT.** | |

### INTRODUCTION

This matter came before the Honorable Anita A. Sukola on February 26, 2018 on Max Theodore Dizon Manabat's ("Defendant") Motions for Judgment of Acquittal and for a New Trial. The Defendant was represented by Attorney F. Randall Cunliffe. Assistant Attorney General Peter J. Santos appeared on behalf of the People of Guam ("People"). Upon review of the written and oral arguments, and legal authorities presented by the Parties; for the reasons set out herein, the Defendant's Motions for Judgment of Acquittal and for a New Trial are hereby **DENIED**.

A **Sentencing Hearing** is set for **June 12, 2018** at **11:00 a.m.** The Court also **ORDERS** the following: the Probation Services Division may submit an update to the Pre-Sentencing Investigation Report filed on February 1, 2018. Such update, if any, shall be filed no later than June 1, 2018. The Parties shall have until June 8, 2018 to file Sentencing Memoranda.

*ORIGINAL*

## BACKGROUND

On December 28, 2017, a Superior Court of Guam Petit Jury returned a verdict of guilty against the Defendant on the sole charge[1] in the Amended Superseding Indictment, Vehicular Homicide. See Am. Superseding Indictment (Dec. 12, 2017); see also, 16 G.C.A. § 18111(a). The charge arose out of a car crash that occurred on Marine Corps Drive near the Yigo Payless on August 13, 2013. The Defendant was driving a black Toyota Camry southbound when he entered the center lane and attempted to make a left turn off of Marine Corps Drive. The Defendant's cousin, Paolo Sangil was in the passenger seat of the Camry. James Paul Aguero was driving a moped northbound on Marine Corps Drive, with passenger Doreen L. Manglona. When the Defendant turned left across northbound traffic, the moped driven by Aguero collided with the Defendant's vehicle. All four individuals were taken to the hospital, where Aguero later died from injuries sustained during the crash.

The trial in this matter commenced on December 13, 2017, and continued on December 14, 15, 21, 22, 27, and 28, 2017. During the People's case-in-chief, and relevant to the instant Motions, the following witnesses testified to *inter alia* the following:

### i.    Mr. Owen Lorzano ("Lorzano")

Lorzano testified that during the early evening on August 13, 2013, he was driving home and headed northbound on Marine Corps Drive near the Yigo Payless. Testimony of Owen Lorzano, Direct Examination, Jury Trial at 1:21:25 p.m. to 1:28:30 p.m. (Dec. 21, 2017). Lorzano stated that the road was dry and that traffic was moderate. Id. He was driving between thirty-five (35) to forty (40) miles per hour. Id. Lorzano further stated that he was eight to ten car lengths behind a moped and that the moped was going about the same speed as he was. Id. He then testified that he saw a black vehicle, heading southbound, move into the center lane and make a

---

[1] The Defendant was initially charged with two (2) counts of Vehicular Homicide (As a 2nd Degree Felony), Improper Left Turn (As a Violation), Reckless Driving with Injuries (As a Misdemeanor), and Failure to Yield the Right of way (As a Violation) in an Indictment filed on September 6, 2013. A Superseding Indictment, containing the same charges, was returned by the Grand Jury on October 25, 2013. In a Decision and Order dated April 7, 2015, this Court dismissed the charges of Improper Left Turn (As a Violation), Reckless Driving with Injuries (As a Misdemeanor), and Failure to Yield the Right of Way (As a Violation). In a separate Decision and Order issued on January 11, 2016 the Court dismissed the first Count in the Superseding Indictment of Vehicular Homicide (As a 2nd Degree Felony).

left turn. Id. Lorzano stated that he cringed at the time because he did not think that the car would make the left turn without colliding with the moped. Id. Lorzano did not remember whether the vehicle had a turn signal on when making the turn. Id. Lorzano testified that it appeared that the driver of the black vehicle did not see the moped. Id. The vehicle and the moped collided and Lorzano stated he pulled over, called 9-1-1, and tried to help the driver and passenger of the moped who were on the ground. Id.

### ii.   Doreen L. Manglona ("Manglona")

Manglona testified that on the evening of August 13, 2013, she was a passenger on a moped driven by her then-boyfriend Aguero. Testimony of Doreen Manglona, Direct Examination, Jury Trial 1:32:58 p.m. to 1:42:45 p.m. Manglona testified that she spent the day cooking at her sister's house in Dededo, that Aguero picked her up that evening, and the two headed home to Yigo on the moped. Id. The two were heading northbound on Marine Corps Drive. Id. Manglona further testified that the two planned to stop at the gas station to put gas in the moped and purchase cigarettes. Id. Manglona stated that near the Yigo Payless, she remembers a black car, heading southbound, entered the center lane and attempted to make a left turn across the northbound lanes. Id. Manglona further testified that the car was coming fast and she knew the car and the moped were going to collide when the car started the turn. Id. The car and the moped collided, and she testified that everything happened so fast. Id. The next thing she remembers is waking up on the ground to emergency lights and people standing around her. Id.

### iii.   Officer Restituto J. Guevara, Guam Police Department

Officer Guevara testified that he was one of the officers who initially responded to the scene of the crash on August 13, 2013. Testimony of Officer Restituto Guevara, Jury Trial, Direct Examination 1:25:30 p.m. to 1:25:01 p.m. (Dec. 22, 2017). He testified that he interviewed Lorzano at the scene. Id. Officer Guevara further testified that he interviewed the operator of the black Camry, Max Manabat and identified Mr. Manabat by his Driver's License. Id. He further stated that the Defendant stated during the interview that he was headed southbound, slowed, and

then executed a left turn. Id. The Defendant also stated that he did not see the moped until the light was very close. Id.

<b><u>DISCUSSION</u></b>

As noted above, there are two motions before the Court: the Defendant's Motion for a Judgment of Acquittal was filed on January 5, 2018. The People filed a response to the Motion on January 22, 2018. The Defendant also filed a Motion for a New Trial on January 5, 2018. The People filed an Opposition to that Motion on February 20, 2018. The Defendant replied to the Opposition on February 26, 2018. The Court held hearings on the Motions on February 14, 2018 and February 26, 2018, and took both matters under advisement on February 26, 2018. The Court also ordered, without objection from either Party, that the matters would be addressed in one Decision and Order. The Court addresses each motion separately below.

**i.     <u>Defendant's Motion for Judgment of Acquittal</u>**

The Defendant makes two arguments in the Motion for Judgment of Acquittal. First, the Defendant "renews his earlier [argument for] judgment of acquittal [made] at the close of the Government's evidence." Def's Mot. J. Acquittal 1 (Jan. 5, 2018). At the close of the People's case-in-chief on December 22, 2017, the Defendant moved orally for a judgment of acquittal. Jury Trial 1:43:57 p.m. to 1:52:43 p.m. (Dec. 22, 2017). The Defendant argued that during the People's case-in-chief, the People failed to provide sufficient evidence that the Defendant was the driver of the black Camry that collided with the moped driven Aguero on August 13, 2013. Id. The Defendant renews this argument in his January 5, 2018 Motion for Judgment of Acquittal. Def's Mot. J. Acquittal 1 (Jan. 5, 2018).The Defendant also argues that the Court should grant a Judgment of Acquittal because "as a matter of law, the jury could not have found the Defendant guilty of criminal negligence. Id.

In opposition, the People only responded to the Defendant's second argument, stating "[i]t is perfectly reasonable for a jury of 12 people to conclude that a person who is driving a vehicle at night, on a main highway, has a duty to be aware of his surroundings under the circumstances at the time, and that not being fully aware of the circumstances constitutes a gross deviation of care

that a reasonable person would exercise in the situation." People's Response to Def's Mot. J. Acquittal 3 (Jan. 22, 2018).

Under Guam law, a defendant may move for a Judgment of Acquittal at the close of the evidence of either side if the evidence is "insufficient to sustain a conviction of such offense. . . ." 8 G.C.A. § 100.10. The Supreme Court of Guam has held "[i]t is not the province of the court, in determining a motion for judgment of acquittal, to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." People v. Chin Song, 2012 Guam 21 ¶ 29 (citations and brackets omitted). Stated differently, "the court does not ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt . . . [r]ather, [the court] must give full play to the responsibility to the trier of fact to weigh conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." People v. Anastacio, 2010 Guam 18 ¶ 18 (brackets omitted). The Court is only concerned with "the existence or nonexistence of evidence, not its weight." Chin Song, 2012 Guam 21 at ¶ 29 (citations omitted). If there is "any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, [the court] must find the case was properly submitted to the jury." Id.

The Supreme Court of Guam has also held that once an accused is convicted, the presumption of innocence gives way to a presumption of guilt. Chin Song, 2012 Guam 21 at ¶ 28. On a Motion for Judgment of Acquittal post guilty verdict, the Defendant bears the burden of showing "that the evidence was legally insufficient to sustain a guilty verdict." Id. When disposing of a Motion for Judgment of Acquittal, the evidence is viewed in the light most favorable to the People and all reasonable inferences are therefore drawn in the People's favor. See Id.

**a. Sufficient evidence was presented at trial such that a reasonable juror could find the Defendant was the operator of the black Camry at issue.**

In support of the argument that the People failed to put on sufficient evidence that the defendant was the operator of the black Camry, the Defendant relies on, U.S. v. Brannon, 404 A.2d 926 (D.C. 1978). In Brannon, the court confronted the issue of whether a trial court erred in

determining that an in-court identification of the defendant should be suppressed on constitutional grounds. Brannon, 404 A.3d at 928. However, in *dicta*, the Brannon court did state that "[i]f the evidence presented by the government in its case in chief is so weak that a jury could not resolve the identity against the accused beyond a reasonable doubt, a timely motion for acquittal will be granted." Brannon, 404 A.2d at 930.

The Court recognizes that identification of the defendant is "always an essential element the government must prove beyond a reasonable doubt." U.S. v. Alexander, 48 F.3d 1477, 1489-490 (9th Cir. 1995). However the Court disagrees with the Defendant's position that in-court identification is required. Rather, the state of the law is that "identification can be inferred from the facts and circumstances that are in evidence." Alexander, 48 F.3d at 1489-90 (reasoning in that specific case that separate witnesses testified regarding their contacts with the defendant and neither suggested that the person on trial with the same name was not the same person) (citations and quotations omitted)).

Here, Officer Guevara testified that he arrived at the scene and interviewed an eye witness and Max Manabat, whose identity he confirmed by driver's license. He indicated that Max Manabat was the operator of the black Camry. Further, none of the witnesses called by the People, including Officer Guevara, indicated that the wrong person was sitting at the Defense table. Thus, the Court finds there was evidence presented from which a reasonable juror could find that the Defendant, who shares the name of the person identified by Officer Guevara, was the operator of the black Camry that was involved in the crash with the moped operated by Aguero on August 13, 2013. On a Motion for Judgment of Acquittal, the Court is only concerned with the presence of evidence and not the weight of evidence. Thus, as to the Defendant's identification argument, the Defendant's Motion for Judgment of Acquittal is **DENIED.**

**b. Sufficient evidence was presented at trial such that a reasonable juror could find the Defendant acted with criminal negligence.**

A Motion for Judgment of Acquittal is properly denied where, when all other elements of a crime are undisputed, specific facts in evidence support a reasonable inference that a defendant

had the requisite *mens rea* to be found guilty of a crime. See Chin Song, 2012 Guam 21 at ¶¶ 44-45. In Chin Song, the defendant instigated an altercation and struck the victim on the top of the head. Id. at ¶¶ 3-23. The force of the defendant's blow was so hard that the victim was rendered unconscious, and suffered internal bleeding and brain damage so severe that he later died as a result of the blow. Id.

The defendant was convicted of manslaughter and aggravated assault which required the government to prove that the Defendant acted recklessly[2] when he struck the victim on the top of the head. Id. at ¶ 24. The defendant moved for a Judgment of Acquittal, arguing that there was insufficient evidence to find that he acted recklessly. Id. at ¶ 34. The Supreme Court disagreed and found the trial court properly denied the Defendant's Motion for Judgment of Acquittal. Id. at ¶ 58.

The Supreme Court addressed each element of Guam law's definition of recklessness and found evidence that supported the jury's verdict of guilty and implicit finding that the defendant acted recklessly. Chin Song, 2012 Guam 21 ¶¶ 35-57 (reasoning (1) a reasonable jury could have found the defendant's conduct created a substantial risk that he would cause serious bodily injury or death where the evidence showed the defendant punched the victim on the top of the head, and thus in a vulnerable area, with enough force to cause internal bleeding and render the victim unconscious for several minutes; (2) a reasonable jury could have found the defendant had the requisite awareness of the substantial risk because the People showed that the defendant initiated the confrontation and that after he struck the victim, he reacted in a celebratory and unremorseful manner; and finally, (3) a reasonable jury could have found that the defendant's conduct constituted an unjustifiable and gross deviation from the standard of care that a reasonable person would exercise in the same situation because the defendant struck the victim first and thus instigated a confrontation without any valid justification").

_____

[2] Under Guam law, a person acts

> "recklessly or is reckless, with respect to attendant circumstances or the result of his conduct when he acts in awareness of a substantial risk that the circumstances exist or that his conduct will cause the result and his disregard is unjustifiable and constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation."

9 G.C.A. § 4.30(c).

Here, the Defendant was convicted of vehicular homicide under 16 G.C.A. § 18.111 which provides, in relevant part "[a] person is guilty of vehicular homicide if . . . he or she negligently drives a vehicle, which . . . negligence proximately causes death to any person other than himself or herself . . . ." 16 G.C.A. § 18111 (2017) (*emphasis added*).

Under Guam law, a person is criminally negligent or acts with criminal negligence:

> "with respect to attendant circumstances or the result of his conduct when [1] he should be aware of a substantial and unjustifiable risk that the circumstances exist or that his conduct will cause the result and [2] his failure to be aware of the risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation."

9 G.C.A. § 4.30(d). The court provided the language of the Section 4.30(d) in the instructions given to the Jury under Instruction 6B. Following the analysis in <u>Chin Song</u>, the Court will address each element of the criminal negligence definition to determine whether evidence was presented from which a reasonable juror could find the defendant acted with criminal negligence here.

*1. The Defendant should be aware of a substantial and unjustifiable risk that circumstances exist or that his conduct will cause the result.*

In <u>Chin Song</u>, the Supreme Court stated the test for whether a risk is substantial is to "consider both the likelihood that harm will occur and the magnitude of potential harm, mindful that a risk may be 'substantial' even if the odds of the harm occurring are lower than fifty percent." <u>Chin Song</u>, 2012 Guam 21 ¶ 35. Further, courts must look to the specific elements of the conduct that create a risk. <u>Id.</u> at ¶ 40 (reasoning "while kicking another person may not necessarily involve a substantial risk of death, a trier of fact can find that repeatedly kicking the head of another person can create a substantial risk of death") (citation omitted)). Thus, to determine whether conduct creates a substantial risk, "a court must inquire beyond the general nature of the defendant's conduct and consider the specific conduct in which the defendant engaged." <u>Id.</u> at ¶ 41 (citation omitted).

As to whether a risk is justifiable or not, the Supreme Court has reasoned "[w]hether a risk is justifiable is determined by weighing the nature and purpose of the defendant's conduct against

the risk created by the conduct." Chin Song, 2012 Guam 21 at ¶ 55 (reasoning "if a surgeon performs an operation that has a very high likelihood of killing the patient, but the patient will certainly die without the operation, then the conduct is justified . . . even though the risk is substantial").

Here, the crash occurred when the Defendant entered the center lane on Marine Corp Drive near Yigo Payless and attempted to make a left turn across northbound traffic. The Defendant posits that since he did not see the moped driven by Aguero until just before the moped and his vehicle collided, "he should not have been aware of the substantial and unjustifiable risk." Def's Mot. J. Acquittal 2 (Jan. 5, 2018). The Defendant is incorrect in implying that he needed to be aware of the risk in order for criminal liability to arise. See Chin Song, 2012 Guam 21 at ¶ 46 (comparing definition of recklessness and criminal negligence and holding that "*unlike criminal negligence*, recklessness requires the defendant actually have been aware of the risk, *not that he should have been aware of the risk but was not*" (*emphasis added*)). Because the Defendant is charged with a crime that requires that he acted with criminal negligence, the People need only prove that the Defendant failed to be aware of a substantial and unjustifiable risk a reasonable person would have been aware of.

The Court finds that when the Defendant made the left turn across the northbound lanes of traffic, a reasonable juror could have concluded there was a risk that he would collide with the moped. Doreen Manglona testified that she saw the Defendant's vehicle enter the center lane and turn left. Lorzano testified that he was eight to ten car lengths behind the moped, and that he too saw the black Camry enter the center lane and turn left. Lorzano also testified that the conditions were clear, and the road was dry.

Further, weighing the specific conduct of the Defendant at issue and the evidence presented, the Court finds that a reasonable juror could have concluded that the risk that the Defendant could collide with the moped was substantial. Lorzano testified that he could see the moped, and he cringed when he saw the Defendant's vehicle start to turn because he knew that the moped and the car would collide. Manglona also testified that the car was coming fast and she

knew when the Defendant's vehicle started the turn that the moped was going to get hit. The Court finds a reasonable juror could find that the risk of the Defendant's vehicle striking the moped was substantial given the testimony of both Manglona and Lorzano that they both came to an immediate realization that the vehicles would likely collide when they saw the vehicle driven by the Defendant start to turn left.

Finally, the Court finds that at trial there was no testimony of why the Defendant made the turn, only that he and his passenger were on their way home from another cousin's house. Therefore, the Court finds that a reasonable juror could find, based on the evidence as presented at trial, that the Defendant's conduct was not justified in light of the substantial risk that he would collide with the moped during the left turn across northbound traffic.

> 2. *The Defendant's failure to be aware of the risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.*

In determining the standard of care that a reasonable person would adhere to, the Supreme Court has described the reasonable person as, a "reasonable law-abiding person." Chin Song, 2012 Guam 21 at ¶ 56 (citation omitted). Again, Manglona testified that she saw the vehicle from her position as passenger on the moped. Lorzano similarly testified that he saw the moped from eight to ten car lengths behind the moped and he saw the vehicle driven by the Defendant enter the turning lane and start to turn. From this testimony, and viewing the evidence in the light most favorable to the People, the Court finds that a reasonable juror could have concluded that the Defendant's failure to be aware of the substantial risk that in making the left turn, he would collide with the moped, constituted a gross deviation from the standard of care a reasonable person would have exercised in that situation. The court finds that a reasonable juror could have concluded that since Manglona and Lorzano saw the vehicle turning left across traffic, and since Lorzano could see the moped from eight to ten car lengths behind it, a reasonable person in the Defendant's position would have been aware of the moped, and thus would not have disregarded the substantial and unjustifiable risk of collision created by making the left turn when he did.

///

## ii. Defendant's Motion for New Trial

In the Motion for New trial, the Defendant raises arguments similar to those raised in his Motion for a Judgment of Acquittal. See Def's Mot. New Trial 1-2 (Jan. 5, 2018). The People similarly incorporate their arguments in opposition to the Defendant's Motion for Judgment of Acquittal to their opposition to the Motion for a New Trial. See People's Opp'n Mot. New Trial 2-3 (Feb. 16, 2018).

Under 8 G.C.A. § 110.30(a), "[t]he court on motion of a defendant may grant a new trial to him if required in the interests of justice." Interpreting this statute, the Supreme Court of Guam has held that "a trial court's discretion to grant a new trial is much broader than its powers to grant a motion for judgment of acquittal." People v. Leslie, 2001 Guam 23 ¶ 15. The trial court need not view the evidence in the light most favorable to the people and may weigh the evidence and credibility of witnesses. Id. The trial court has the power to "set aside the verdict, grant a new trial or submit the issues for determination by another jury if it concludes that the evidence preponderates sufficiently heavily against verdict that a serious miscarriage of justice may have occurred." Id. However, motions for a new trial based on the weight of evidence are generally disfavored. Id. at ¶ 25. Further, Courts should grant motions for a new trial "sparingly and with caution, doing so only in those really exceptional cases." Id. The Court gave examples of such exceptional cases in Leslie, reasoning "[c]ourts have granted new trial motions based on weight of the evidence only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies."[3]

Here, the Defendant argues:

> "[i]n the case at hand, there was no evidence that, with respect to the attendant circumstances, or the result of his conduct, that [the Defendant] was not aware of an unjustifiable risk that the circumstances existed or that his conduct would cause the result. Further, there was no showing that any failure to be aware of the risk constitute [sic] a gross deviation from the standard of care that a reasonable person would exercise in the situation."

---

[3] See Leslie, 2011 Guam 23 at ¶ 26 (citing United States v. Simms, 508 F.Supp. 1188 (W.D.La.1980); United States v. Capati, 980 F.Supp. 1114 (S.D. Cal. 1997); United States v. Hurley, 281 F.Supp. 443 (D.Conn.1968)).

Def's Reply to People's Opp'n Mot. New Trial 1 (Feb. 20, 2018). The Court construes this argument as attacking the weight of evidence offered toward whether the Defendant acted with criminal negligence. As discussed in Section 1.b. above, the Court finds the testimony of Doreen Manglona and Owen Lorzano was enough for a reasonable juror to find the Defendant acted with criminal negligence when he made the left turn across traffic on the evening of August 13, 2013 and collided with the moped driven by the Aguero. Thus, the Court concludes that the Defendant has not demonstrated sufficient grounds for a new trial. The Defendant only seems to challenge the weight of the evidence of criminal negligence and raises no argument as to how this case presents as an exceptional case which would require a new trial under Leslie and the cases cited therein. Thus, the Defendant's Motion for a New Trial is hereby **DENIED**.

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Defendant's Motions for Judgment of Acquittal and for a New Trial are hereby **DENIED**.

A **Sentencing Hearing** is set for **June 12, 2018** at **11:00 a.m.** The Probation Services Division may submit an update to the Pre-Sentencing Investigation Report filed on February 2018. Such update, if any, shall be filed no later than, June 1, 2018. The Parties shall have until, June 8, 2018 to file Sentencing Memoranda.

SO ORDERED __**MAY 1 4 2018**__ .

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:

e: Time:

Clerk, Superior Court of Guam